IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JACQUELINE A. BLOOM,<br><br>    Plaintiff,<br><br>vs.<br><br>THE TEAMSTER AFFILIATES<br>PENSION PLAN,<br><br>    Defendant. | Case No. 3:07-cv-0079-RRB<br><br>**ORDER RE SUMMARY<br>JUDGMENT MOTIONS** |

I.  INTRODUCTION

This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 (ERISA). At Docket 1, Plaintiff Jacqueline Bloom seeks past-due benefits and damages from Teamster Affiliates Pension Plan (TAPP) for failure to pay benefits under the terms of the plan document and, alternatively, under the theories of promissory estoppel and breach of fiduciary duty. Bloom also seeks costs, attorney fees, and interest. TAPP seeks summary judgment on all counts of Bloom's Complaint at Docket 27. Bloom seeks partial summary judgment requiring TAPP to reinstate her to her "full earned pension" at Docket 30. This matter has

been fully briefed, and the court heard oral argument on June 24, 2008.

**II. FACTS**

Bloom was employed in Fairbanks, Alaska, by General Teamsters Local 959 from June 1970 through June 2004. As a result of that employment and contributions made by her employer, she became a participant, beneficiary, and retiree of two pension plans: the Teamster Affiliates Pension Plan ("TAPP") and also the Alaska Teamster-Employer Pension Trust ("Alaska Plan").[1] There is no dispute that TAPP, the Defendant here, is an employee benefits plan subject to the provisions of ERISA.

Bloom had a specific concern whether her TAPP pension would be reduced because she had a second pension under the Alaska Plan. Accordingly, she asked TAPP whether its plan document would require it to "aggregate" with the Alaska Plan. TAPP responded with a benefit estimate in a letter dated April 16, 2003, which stated that Bloom was entitled to a benefit of $78,200 "immediate lump sum" and a monthly annuity of $2,145.[2] Responding to Bloom's aggregation question, TAPP told her that her pension would "not be

---

[1] Bloom was enrolled in a third pension plan, which is not relevant to these proceedings.

[2] Alternatively, Bloom could have chosen a $2,580 monthly payment without the lump-sum payout. Docket 32-5.

reduced" by aggregation with the Alaska Plan because that plan was a multi-employer plan.[3]

Bloom chose to retire effective June 30, 2004. She prepared and submitted her pension application, which TAPP received on April 16, 2004. TAPP sent Bloom another letter regarding estimated benefits on August 25, 2004.[4] This letter reiterated the same amounts as the letter dated April 16, 2003, but did not contain the aggregation language. By letter dated September 24, 2004, Bloom was advised her pension had been formally approved by the trustees in the amount of $78,251 plus $2,187 per month, retroactive to her July 1, 2004 retirement. She was to expect checks by mail in the near future.[5] But on October 1, 2004, TAPP notified Bloom by telephone and letter that TAPP had stopped payment on her lump-sum termination benefit check, as well as her first pension check.[6] On October 12, 2004, TAPP informed Bloom via letter that her termination benefit of $78,251 would be reinstated, and that her monthly pension benefit was calculated at

---

[3] Docket 32, Ex. B at 2.

[4] Docket 27, Ex. K.

[5] Docket 32, Ex. D.

[6] Docket 32, Ex. E.

ORDER RE SUMMARY JUDGMENT MOTIONS - 3
3:07-CV-0079-RRB

$62.00 per month.[7] The lump-sum payment reissued nine months later, without interest, on July 28, 2005.[8]

Bloom appealed the Administrator's decision to the trustees by letter dated October 12, 2004.[9] On January 12, 2005, Bloom renewed her appeal to the trustees, complaining that she relied to her detriment on the misinformation provided by TAPP regarding the amount of her pension.[10] Bloom subsequently submitted a further appeal document to the trustees, contesting the decision to aggregate. The trustees mentioned the issue at its meeting on March 15, 2005, but took no action indicating "further research would be needed."[11]

At the next trustees' meeting, Bloom's situation was reviewed. Her pension was formally approved by the trustees in the amount of $78,251 plus $1,573.61 per month.[12] However, TAPP requested Bloom's signature on a document releasing TAPP and its advisors of liability from any existing claim and also any future

---

[7] Docket 32, Ex. X.

[8] Docket 32, Ex. I at 1.

[9] Docket 32, Ex. J.

[10] Docket 32, Ex. M.

[11] Docket 32, Ex. Q.

[12] Docket 32, Ex. R at 145-146.

claim "from the beginning of the world to the end of time."[13]
Bloom refused to sign the release.

On July 28, 2005, another letter from TAPP detailed the calculations made pursuant to Section 415 of the Internal Revenue Code, and concluded that Bloom's monthly pension amount under TAPP should have been calculated at $833 per month.[14] She began receiving payments at this rate. This lawsuit followed.

## III. DISCUSSION

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[15] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[16] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine

---

[13] Docket 32, Ex. T.

[14] Docket 32, Ex. I.

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[16] *Id.* at 323-325.

issue for trial.[17] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[18] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[19]

  **B. Terms of the TAPP Plan & Internal Revenue Code § 415**

   A pension plan document is a legal document that sets forth the terms and conditions for participants to earn and receive a vested pension at retirement age. It is undisputed that Bloom was eligible for a pension under TAPP. Via the Internal Revenue Code, (IRC), Congress has provided for a maximum limit on the amount of pension benefits that can be provided to any individual participant through a tax-qualified pension plan.[20] TAPP argues the amount of pension sought by Bloom is illegal because it exceeds the maximum benefit limitation on the annual payout amount that is placed on defined benefit pension plans by § 415(b).

---

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[18] *Id.* at 255.

[19] *Id.* at 248-49.

[20] 26 U.S.C. § 415.

Section 10.1 of the TAPP plan document attempts to incorporate the limitations described in § 415.[21] It is undisputed that §415 would not impose any limitation on Bloom's pension unless the test was applied *after* aggregating her TAPP and Alaska Plan benefits. Accordingly the dispute centers on whether the plan document contains any requirement to aggregate Bloom's TAPP benefits with her Alaska Plan benefits.

In 2001, in an attempt to comply with a change in the law under the IRC, TAPP's legal counsel drafted an amendment to the plan. The plan document was subsequently amended again and restated in 2004, carrying over the changes made in 2001. Accordingly, at the time of Bloom's retirement in 2004, the TAPP plan provided:

> ***Notwithstanding any other provision of this Plan***, if a Member is or has been covered under this Plan and ***another defined benefit plan that is required to be aggregated*** under Section 415 of the Code and the regulations there under, then the benefits payable with respect to such Member under this Plan shall be reduced to the extent necessary to ensure that the total amount payable with respect to the Member under this Plan and the other ***defined benefit plan*** does not exceed the limitations of Section 415(b)of the Code. For purposes of the preceding sentence, the term

---

[21] Section 10.1(a)(1) describes the "maximum compensation" limit (based on highest compensation during a 36 month period.) Section 10.1(a)(2) describes the "maximum dollar" limit ($160,000 subject to actuarial reduction for early retirees).

> ***"defined benefit plan"*** shall be redefined, effective as of January 1, 2002, to mean only a defined benefit plan that is ***not a multi-employer plan***. This redefinition shall be applied, however, only to the ***maximum dollar limitation*** which is set forth in Section 415 of the Code and in Section 10.1(a)(2) above.[22]

In drafting the amendment, TAPP's counsel used the words "maximum dollar limitation" instead of "maximum compensation limitation," which gave the provision an entirely different meaning that what TAPP now says was intended. TAPP now describes this error as a "scrivener's" error, which was not corrected until the TAPP Trustees took action in February 2008 to amend and restate Plan Amendment retroactively to 2001.

### C. Plain Meaning

Bloom seeks enforcement of the Plan as written in 2004. She argues that a plain reading of section 10.1(h) yields the result that her two pensions should not be aggregated, resulting in a significantly higher monthly pension payment from TAPP. Bloom argues that under the 2004 language of the Plan, the pre-retirement advice Bloom received from TAPP, that it would not aggregate her TAPP and Alaska Plan benefits, and also the original 2004 approval of her pension, were in accord with the Plan Document.

---

[22] Section 10.1(h), Docket 27, Ex. C at 44 (emphasis added).

ORDER RE SUMMARY JUDGMENT MOTIONS - 8
3:07-CV-0079-RRB

TAPP requests this court to reject enforcement of the written Plan language under various theories. TAPP asks this court to disregard the non-aggregation mandate of Section 10.1(h) as a scrivener's error, and instead apply the aggregation language set forth in IRC §415(f)(3)(A) in order to effectuate the intent of the trustees. It requests a finding that the language is unenforceable because it violates ERISA. Elsewhere, TAPP suggests that the language of 10.1(h) is ambiguous, and therefore the Court must look to extrinsic evidence to resolve this ambiguity. Finally, TAPP argues that the first sentence ( "Notwithstanding any other provision of this Plan") should be elevated to the status of a "savings clause," prohibiting any Plan amendment which would contravene its former meaning.

The Ninth Circuit has held that the terms in an ERISA plan should be interpreted "in an ordinary and popular sense as would a [person] of average intelligence and experience."[23] More specifically:

> [C]ourts should first look to explicit language of the agreement to determine, if possible, the clear intent of the parties. The intended meaning of even the most explicit language can, of course, only be understood in the light of the context that gave rise to its inclusion. . . . Each provision in an

---

[23] *Richardson v. Pension Plan of Bethlehem Steel*, 112 F.3d 982, 985 (9th Cir. 1997) (internal citations omitted).

> agreement should be construed consistently
> with the entire document such that no
> provision is rendered nugatory. . . .
> Typically, however, when a plan is ambiguous,
> a court will examine extrinsic evidence to
> determine the intent of the parties.[24]

The Court finds that § 10.1(h) is, at best, ambiguous. It is impossible to reconcile the second and third sentences of the provision with the first sentence of the provision, "in the light of the context that gave rise to" the amended language. It is undisputed that the amended language of the last two sentences was included in response to a change in the IRC, but the new language then failed to implement the Code changes due to either a scrivener's error or TAPP counsel's misinterpretation of the law. The Court need not determine which explanation is true in order to find that the amendment as written is inconsistent with the plan purpose and language, and is inconsistent with the IRC, and that it therefore is ambiguous. Furthermore, in light of Bloom's estoppel argument, it is unnecessary for the Court to consider extrinsic evidence to determine the "intent of the parties." For purposes of this matter, the intent of TAPP or its counsel at the time of the amendment is irrelevant.

---

[24] *Id.* (citations omitted).

**D. Estoppel**

Plaintiff argues that if the Court finds ambiguity, the doctrine of estoppel should be applied, and TAPP should not be permitted to retroactively change her pension amount because she relied on the quoted amount in making her retirement decisions. TAPP disputes that there is adequate evidence to support an estoppel argument.

The Ninth Circuit has held that recovery may be permitted under the federal common law claim of equitable estoppel in an ERISA action.[25] Specifically, the Ninth Circuit allows federal common law estoppel to enforce a representation regarding a benefit plan when the representation interprets an arguably ambiguous plan term, and does not modify the plan itself, but only when incorrect representations involving an oral interpretation of the Plan are made to the employee.[26]

The Court has already determined ambiguity. Although it is undisputed that oral estimates were provided to Bloom, TAPP suggests that Bloom's claim is preempted to the extent she relies on *written*, rather than oral, statements to assert reliance. However, the Court finds that the written letters of Tom Metzinger,

---

[25] See *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821-22 (9th Cir. 1992).

[26] *Id.*

ORDER RE SUMMARY JUDGMENT MOTIONS - 11
3:07-CV-0079-RRB

the Trust Administrator, merely *exceed* the requirement that there be "incorrect representations involving an oral interpretation of the Plan." Metzinger's letters memorialize his interpretations. Furthermore, they are consistent with the oral statements made by other TAPP representatives. The Court finds it would put form over substance to exclude his letters because they were not presented orally to Bloom.

Having concluded that Bloom has standing to pursue an estoppel claim, the Court turns to the elements she must prove. When a plaintiff seeks to recover benefits under an ERISA plan based on a claim of equitable estoppel, the Ninth Circuit requires the plaintiff to show: (1) that the party to be estopped knew the relevant facts; (2) that the party to be estopped intended that its conduct would be acted on or acted in a way that the plaintiff had a right to believe it was so intended; (3) that the plaintiff was ignorant of the true facts; and (4) that the plaintiff relied on the former's conduct to his injury.[27]

TAPP knew the relevant facts. Bloom was hoping to retire, and she sought a summary of her benefits under the Plan. Any error on TAPP's part was an error in interpretation of its own Plan. TAPP routinely provided estimates to its participants in

---

[27] *Greany*, 973 F.2d at 821.

anticipation of retirement. It should have come as no surprise that a participant would rely on TAPP for at least a close approximation of available pension benefits. TAPP also knew or should have known about the § 415 limitations. Although the letters contained disclaimers that the numbers were merely estimates and subject to change, this case is unique in that Bloom specifically asked about aggregation, a question that required a straightforward "yes" or "no" answer. The Court is not persuaded by TAPP's repeated argument that the TAPP statements came from "non-fiduciary plan administrators." Although this may be true with respect to the telephone conversations Bloom had with various trust employees, the letters were drafted on TAPP Board of Trustees letterhead, and were signed by Tom Metzinger, the trust administrator. The final letter was from the Board itself.

TAPP argues that Bloom does not meet the third requirement, that she was "ignorant of the true facts," because Bloom knew as well, or better, than the trust employees the impact of § 415 on her pension. However, TAPP is assuming Bloom understood and engaged in a *legal analysis*, not a fact. The fact is that Bloom had knowledge that aggregation *could* occur, and she sought a definitive answer from TAPP - the entity responsible for making the calculations - as to whether aggregation *would* occur. Although TAPP argues that Bloom's repeated requests regarding

ORDER RE SUMMARY JUDGMENT MOTIONS - 13
3:07-CV-0079-RRB

aggregation are a sign that she knew TAPP was calculating her pension incorrectly and took advantage of TAPP's error, the Court finds that Bloom's repeated requests regarding aggregation should have triggered someone at TAPP to realize that they had made an error. Instead, Bloom's application went through numerous levels of review before the trustees officially informed her of her pension amount by letter on September 24, 2004.[28]

    Finally, Bloom relied on TAPP's conduct to her injury. TAPP argues that Bloom never relied on any of the incorrect information on her TAPP benefit in making her decision to retire early, and therefore her claims in this regard are without merit. Specifically, TAPP has made much ado about Bloom's statement at her deposition that even if she had known the aggregated amount of her TAPP retirement, she could not say definitively whether or not she would have retired when she did, but rather that it would have "weighed heavily" in her decision.[29] TAPP argues that Bloom's statement is not enough to show reliance on TAPP's conduct. The Court disagrees. Bloom's retirement, when considered in conjunction with additional debts she took on at the time of her retirement, clearly indicates her reliance on TAPP's repeated

---

[28] Docket 32, Ex. D.

[29] Docket 27, Ex. I at 117-118.

statements regarding her pension.[30] Such reliance was not unreasonable in light of the specific facts of this case.

There is no evidence to support the theory that Bloom somehow took advantage of TAPP, using her knowledge of § 415. Nor is the Court persuaded by Metzinger's statement in his deposition that pension estimates never contained aggregation calculations.[31] Bloom specifically asked whether her pension amounts - whatever they were - would be aggregated. Metzinger specifically replied that her pensions would *not* be aggregated. This, more so than the mathematical blunders, was TAPP's critical error. TAPP offers no rational argument why Bloom should have presumed that her pension amounts would be aggregated, in light of the definitive answer from the TAPP trust administrator that they would *not* be aggregated.

E. **Interest**

TAPP conceded at oral argument that ERISA requires interest on late payments for "normal retirement," and the calculations of such interest are governed by ERISA. However, TAPP suggested that because Bloom took early retirement, that the interest provisions may be inapplicable. Elsewhere, TAPP indicated

---

[30] Bloom's affidavit at Docket 31 indicates that she made financial commitments in light of the amount of her pension, including home renovation and construction, college tuition, and expenses associated for caring for her elderly mother.

[31] Docket 27, Ex. F at 91.

that it would not pay interest on any late payments absent a court order.

The Court finds that interest on late payments is appropriate in this case. The parties shall advise the Court if further briefing is required to determine the rate or amount of such interest.

**F.  Remaining Issues**

Plaintiff's Complaint also alleges a breach of fiduciary duty, as well as a failure to follow claim procedures and a failure to provide required information. The Court finds there is inadequate information in the record to grant summary judgment to either party regarding these issues. Moreover, they may be rendered moot by virtue of this decision. The parties shall advise the Court if they require the assistance of a settlement judge.

**IV. CONCLUSION**

In light of the foregoing, it is hereby **ORDERED** that Plaintiff's Motion for Partial Summary Judgment at **Docket 30** is **GRANTED.** Bloom's pension amount shall be calculated without aggregation, retroactive to the date of retirement. TAPP shall pay interest under ERISA for any past-due amounts. Defendant's Motion for Summary Judgment at **Docket 27** is **DENIED.**

ENTERED this 5th day of August, 2008.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE